UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 99 CR 771-1 |
| ) | |
| vs. ) | Judge Gary Feinerman |
| ) | |
| ROBERT ROLLINS, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Nearly two decades ago, Robert Rollins was sentenced to 106½ years in prison for a series of four armed bank robberies in which nobody was physically injured. Doc. 103. The Seventh Circuit affirmed his convictions and sentences. 301 F.3d 511 (7th Cir. 2002). Rollins moves for a sentence reduction to time served—approximately 22 years—under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Doc. 212. Last year, this court denied the motion without prejudice, Docs. 236-237 (reported at 2020 WL 3077593 (N.D. Ill. June 10, 2020)), but the Seventh Circuit vacated that ruling and remanded for further consideration in light of *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020). 2020 WL 7663884 (7th Cir. Nov. 30, 2020). Rollins's motion is granted in large part, and his custodial sentence is reduced to 28 years plus one day.

### Background

Rollins was apprehended after committing a bank robbery on March 2, 1999, in Independence, Missouri. 301 F.3d at 513; Doc. 259 at 13-14. In a proffer, which he later repudiated, Rollins admitted to having committed four other bank robberies in Chicago during the preceding months, from December 1998 through February 1999. 301 F.3d at 513. He turned

1

26 years old just before the fourth robbery. Doc. 259 at 2. The robberies followed a common pattern: Rollins entered a bank, approached the teller counter, and, after asking innocuous questions about getting change or opening an account, pointed a handgun at the teller and demanded cash. *Id*. at 3-4. Rollins had an accomplice to each robbery either inside the bank or serving as a getaway driver. *Ibid*. He stole a total of $12,058 from the Chicago banks. *Id*. at 5.

Rollins was prosecuted in two separate cases. In March 1999, he was indicted in the Western District of Missouri for the Missouri robbery. *United States v. Rollins*, No. 99-cr-06001 (W.D. Mo. Mar. 24, 1999) ("*Rollins I*"), ECF No. 11. (Docket entries in the present case are cited as Doc. __, while docket entries in *Rollins I* are cited as *Rollins I*, ECF No. __.) In June 1999, Rollins pleaded guilty to one count of bank robbery, 18 U.S.C. § 2113(a), and one count of using or carrying a firearm in the commission of the robbery, *id*. § 924(c)(1). *Rollins I*, ECF No. 23. The *Rollins I* court continued the sentencing while this case remained pending.

In October 1999, Rollins was charged by indictment in this case with four counts of bank robbery, 18 U.S.C. § 2113(a), and four counts of using or carrying a firearm in the commission of each robbery, *id*. § 924(c)(1). Docs. 1, 38. A jury found Rollins guilty on all counts. Docs. 74-75. In October 2001, the court sentenced him to 106½ years in prison. Doc. 103 (Hibbler, J.).

At the time Rollins was sentenced, 106½ years was the minimum sentence that could have been imposed. Doc. 259 at 20. The sentence's first component consisted of concurrent 6½-year terms for the bank robberies, which was the bottom end of the then-mandatory Sentencing Guidelines range. *Ibid*.; *see United States v. Booker*, 543 U.S. 220, 233 (2005) ("The Guidelines as written … are not advisory; they are mandatory and binding on all judges."). The sentence's second component consisted of four consecutive 25-year terms for the § 924(c) charges. That

100-year term was the statutory minimum because the then-applicable version of § 924(c)(1)(C)(i) imposed a 25-year minimum "[i]n the case of a second or subsequent [§ 924(c)] conviction," which the Supreme Court had interpreted to mean a second "finding of guilt by a judge or jury." *Deal v. United States*, 508 U.S. 129, 132 (1993). Rollins had already pleaded guilty to a § 924(c) charge in *Rollins I*, so all four of his § 924(c) convictions in this case were "second or subsequent" as *Deal* understood the statute, even though he had committed all his armed robberies before he was prosecuted for any of them. Rollins's projected release date is February 8, 2092. Doc. 214 at 5.

After judgment was entered in this case, the *Rollins I* court sentenced Rollins to 33 months in prison for the robbery and the statutory minimum of 7 years for the § 924(c) conviction, with those sentences running consecutively to each other but concurrently with the sentence in this case. *Rollins I*, ECF No. 39. The Eighth Circuit affirmed. *United States v. Rollins*, 73 F. App'x 189 (8th Cir. 2003). Including his pretrial detention, Rollins has been in federal custody for over 22 years, Doc. 259 at 1, so he has served the custodial portion of the *Rollins I* sentence, with only the judgment here requiring his continued imprisonment.

Were Rollins sentenced today for his crimes in this case, he would face a much lower statutory minimum sentence of 28 years in prison for the four § 924(c) counts. The First Step Act amended § 924(c) to trigger the 25-year minimum only for "a violation of this subsection that occurs after a prior conviction under this subsection has become final." § 403(a), 132 Stat. at 5221-22 (codified at 18 U.S.C. § 924(c)(1)(C)). Rollins's violations of § 924(c) all predated the judgments in both *Rollins I* and this case, so his minimum sentence today would be seven years for each count pursuant to § 924(c)(1)(A)(ii)—because he brandished a firearm—to be served consecutively under § 924(c)(1)(D)(ii). He also would need to serve at least one day of

3

consecutive time for the robbery counts. *See Dean v. United States*, 137 S. Ct. 1170, 1177 (2017) ("Nothing in [§ 924(c)] prevents a district court from imposing a … mandatory minimum sentence under § 924(c) and a one-day sentence for the predicate … crime, provided those terms run one after the other.").

Rollins's motion for a sentence reduction argues that this dramatic change in sentencing law and his exemplary record of rehabilitation in prison qualify as "extraordinary and compelling reasons" that warrant a reduction of his sentence to time served. Doc. 214 at 14-20. As the Government acknowledges, Doc. 226 at 2, Rollins exhausted his administrative remedies by asking his warden to submit a § 3582(c)(1)(A) motion on his behalf, Doc. 214 at 6. When addressing Rollins's motion last year, this court concluded that U.S.S.G. § 1B1.13, the Guidelines Policy Statement implementing § 3582(c)(1)(A), did not permit it to grant a sentence reduction for a reason other than medical condition, age, or family circumstances, except on the motion of the Director of the Bureau of Prisons. 2020 WL 3077593, at *2. The Seventh Circuit later held in *Gunn*, 980 F.3d at 1180, that the Policy Statement as presently composed does not bind district courts where, as here, a prisoner moves under § 3582(c)(1)(A) for a sentence reduction. On the parties' joint motion, the Seventh Circuit vacated this court's ruling and remanded for further proceedings in light of *Gunn*.

## Discussion

### I. Extraordinary and Compelling Reasons

To obtain relief, Rollins must show that his case presents "extraordinary and compelling reasons [that] warrant … a reduction" in his prison sentence. 18 U.S.C. § 3582(c)(1)(A)(i). The starting point for this analysis is *Gunn*, where the Seventh Circuit held that the Policy Statement articulated in U.S.S.G. § 1B1.13 "addresses motions and determinations of the Director, not motions by prisoners." 980 F.3d at 1180. Without a binding policy statement from the

4

Sentencing Commission, "[t]he statute itself sets the standard: only 'extraordinary and compelling reasons' justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii)." *Ibid*. That said, the Seventh Circuit cautioned that the Policy Statement and its Application Notes "provide a working definition of 'extraordinary and compelling reasons,'" and "a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Ibid*. In short, the Seventh Circuit concluded, "[d]istrict judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review." *Id*. at 1181.

The Policy Statement provides little guidance in this case. The grounds for a reduced sentence asserted by Rollins—a stupendously long prison term that almost certainly would not be imposed today, combined with his "admirable record of rehabilitation, and his achievements while incarcerated," Doc. 252 at 3—bear little resemblance to the specific "extraordinary and compelling" reasons listed in Application Notes 1(A)-(C), which concern a defendant's medical condition, age, and family circumstances. U.S.S.G. § 1B1.13 n.1(A)-(C). The only potentially applicable reason appears in Application Note 1(D), a catch-all that merely mimics the statutory phrase "extraordinary and compelling reason" and thus provides no guidance independent of the statute itself. U.S.S.G. § 1B1.13 n.1(D).

Application Note 2 does bear on Rollins's motion, but only by way of defeating an argument advanced by the Government. In opposing the motion, the Government cites legislative history that, by its lights, conveys that an "extraordinary and compelling reason" must be a post-judgment change in circumstance, such as a terminal illness that manifests after sentencing. Doc. 226 at 14 (citing S. Rep. No. 98-225 at 55-56, 121 (1983)). But Application

5

Note 2 strikes a different path, making clear that a circumstance known to the sentencing court at the time of sentencing can later justify a sentence reduction under § 3582(c)(1)(A):

> For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

U.S.S.G. § 1B1.13 n.2.

Beyond that, the Policy Statement does not speak to Rollins's motion, so the court must determine on its own whether the circumstances here qualify as "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A)(i), as those words are commonly used. *See United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) ("Unless words [in a statute] are otherwise defined, they will be interpreted as taking their ordinary, contemporary, common meaning.") (quotation marks omitted). Rollins unquestionably presents a "compelling" reason for a sentence reduction. As the court observed last year, "the four consecutive 25-year terms for the § 924(c) counts are grossly excessive, especially because nobody was physically injured during the robberies." 2020 WL 3077593, at *1. Given its understanding (later held in *Gunn* to be incorrect) that it was powerless to reduce the sentence, the court encouraged the United States Attorney to "exercis[e] his considerable discretion to move to vacate all but one of Rollins's § 924(c) convictions." *Id*. at *2. No such motion was filed.

To be sure, Rollins's crimes were extremely serious and put many lives at risk. But a de facto life sentence far exceeds appropriate punishment. This case epitomizes the "unjust, cruel, and even irrational" sentences that were sometimes required in multiple-count § 924(c) prosecutions for first-time offenders. *United States v. Angelos*, 345 F. Supp. 2d 1227, 1230 (D. Utah 2004) (Cassell, J.), *aff'd*, 433 F.3d 738 (10th Cir. 2006). Congress in fact recognized the

6

excessiveness of § 924(c)'s 25-year stacked, statutory minimum for first-time offenders when, in the First Step Act, it amended the provision to ensure that the 25-year minimum would apply only to recidivists. § 403(a), 132 Stat. at 5221-22. Congress applied that amendment only prospectively, § 403(b), *id*. at 5222, so it does not reduce Rollins's sentence—and, as noted below, the court does not rely on the amendment or its non-retroactivity to find an "extraordinary and compelling" reason for a sentence reduction under § 3582(c)(1)(A). The court merely observes that Congress, by virtue of the significant change enacted in the First Step Act, plainly agrees that the regime under which Rollins was sentenced resulted in excessive sentences.

More difficult is the question whether Rollins identifies an "extraordinary" reason for a sentence reduction. As another court observed—not that the point needs abundant authority—"extraordinary" means "beyond what is usual, customary, regular, or common." *United States v. Scott*, 461 F. Supp. 3d 851, 862 (E.D. Wis. 2020); *cf. Gray v. Zatecky*, 865 F.3d 909, 912-13 (7th Cir. 2017) (observing that a situation "that describes most habeas corpus petitioners … by definition is not 'extraordinary'" for purposes of the equitable tolling doctrine). The parties here vigorously debate whether the disparity between the 106½-year sentence the law demanded at the time of Rollins's sentencing, on the one hand, and the much lower sentence allowed prospectively by the First Step Act, on the other, is extraordinary in that sense.

The Government is correct to note that "[c]hanges in the law affecting sentencing occur with some frequency," Doc. 253 at 13, and that Congress for whatever reason chose in the First Step Act not to make retroactive the amendment to § 924(c)(1)(C). And it is altogether ordinary for a federal court to impose a sentence mandated by Congress, whatever the court's view as to its fairness. *See Chapman v. United States*, 500 U.S. 453, 467 (1991) ("Congress has the power to define criminal punishments without giving the courts any sentencing discretion."). These

considerations have led some judges to hold that a court cannot "effectively convert the non-retroactivity provision [of the First Step Act] into an extraordinary ground for compassionate release, even if yesterday's way of applying § 924(c) produced a manifestly unreasonable sentence by today's standards." *United States v. Watford*, 2021 WL 533555, at *1 (N.D. Ind. Feb. 12, 2021), *appeal docketed*, No. 21-1361 (7th Cir.); *accord, e.g.*, *United States v. Whitefield*, 2021 WL 943103, at *5 (C.D. Ill. Mar. 12, 2021) ("This Court cannot read retroactivity into the guidelines or the statute without clear language indicating that it is appropriate for the Court to do so."); *United States v. Scott*, 2020 WL 7417963, at *4 (N.D. Ind. Dec. 18, 2020) ("If Congress wished for district courts to make the changes to § 924(c) retroactive it would have said so."), *appeal docketed*, No. 20-3535 (7th Cir.). Other courts have taken the contrary view, holding that Congress's choice not to apply the § 924(c)(1)(C) amendment retroactively can qualify as an "extraordinary" reason for a sentence reduction under § 3582(c)(1)(A). *See United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020) ("The fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i)."); *United States v. Haynes*, 2021 WL 406595, at *6 (C.D. Ill. Feb. 5, 2021) (citing *McCoy* for that proposition), *appeal docketed*, No. 21-1386 (7th Cir.); *United States v. Williams*, 2020 WL 6940788, at *3 (N.D. Ill. Nov. 25, 2020) ("A majority of the courts to have examined this specific question agree that the change to the § 924(c) stacking provision amounts to an extraordinary and compelling reason for a sentence reduction.").

There is no need to choose sides here, for the court agrees with a distinct argument advanced by Rollins, that "the sheer and unusual length of [his] sentence" is extraordinary.

8

Doc. 255 at 4. That argument, which keys off the ordinary meaning of "extraordinary" as "beyond what is usual, customary, regular, or common," *Scott*, 461 F. Supp. 3d at 862, suggests a more quantitative inquiry: How many § 924(c) defendants received sentences comparable to Rollins's sentence? It is beyond dispute that Rollins's sentence is unusually long. He had a Criminal History Category of III. Doc. 259 at 14. In fiscal year 2002, when Rollins was sentenced, the average sentence for a robbery defendant in Criminal History Category III was 79.0 months. U.S. Sent'g Comm'n, 2002 Sourcebook of Federal Sentencing Statistics, tbl. 14 (2002), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2002/table14_0.pdf. The average sentence for a firearms defendant was shorter, 52.8 months. *Ibid*. Granted, such general categories cover a wide range of defendants, and Rollins was sentenced for four armed robberies, not one. But his 1278-month sentence plainly was an extreme outlier even before the First Step Act.

Rollins received that lengthy sentence because the Government chose to charge him with four § 924(c) counts and because he chose to go to trial rather than cooperate or reach a plea bargain. As the Eighth Circuit explained in affirming the *Rollins I* judgment, Rollins had initially agreed to cooperate with the investigation of the Illinois robberies, but he backed out, and the Government concluded that he was ineligible for a substantial assistance reduction under 18 U.S.C. § 3553(e). 73 F. App'x at 190. Of course, there was nothing legally improper with the Government's decision to charge a separate § 924(c) count for each of Rollins's four armed robberies. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."); *United States v. Scott*, 631 F.3d 401, 407 (7th Cir.

9

2011) ("[O]ur case law embodies the long-settled principle that we safeguard prosecutorial discretion by shielding it from judicial review that either forces the prosecutor to act in a prescribed manner or penalizes the prosecutor for acting in his preferred manner."). Nevertheless, given the plain meaning of the term "extraordinary," it is significant that this particular confluence of events—four stacked § 924(c) charges for a first-time offender who exercised his constitutional right to put the Government to its proof at trial—is highly unusual.

Two more recent Sentencing Commission reports shed additional light on the rarity of these circumstances. A 2011 report, based on 2010 data, provides more granular information regarding average sentences than the 2002 report cited above. The average sentence in fiscal year 2010 for a defendant convicted under § 924(c)(1)(C)(i) was 415 months, less than a third of the sentence Rollins received. U.S. Sent'g Comm'n, 2011 Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System, tbl. D-3 (Oct. 2011), https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/mandatory-minimum-penalties/20111031-rtc-pdf/Appendix_D.pdf.

A 2018 report specifically about firearms sentences contains even more detail. In fiscal year 2016—fourteen years after Rollins was sentenced, but the only year for which these data are readily available—a total of 1,976 defendants were convicted of a § 924(c) charge. U.S. Sent'g Comm'n, Mandatory Minimum Penalties for Firearms Offenses in the Federal Criminal Justice System, at 19 (Mar. 2018), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2018/20180315_Firearms-Mand-Min.pdf. Of those defendants, only 156 (about 7.9 percent) were convicted of multiple § 924(c) counts. *Ibid*. Rollins belongs to an even more select group: those convicted of more than three § 924(c) counts in a single prosecution. In 2016, only fourteen defendants—about 0.7 percent of all § 924(c)

defendants—fell into that category. *Id*. at 20. Furthermore, 35.5 percent of offenders convicted of multiple § 924(c) counts were relieved from the mandatory minimum prison term at sentencing pursuant to 18 U.S.C. § 3553(e). *Id*. at 27. So, on the assumption that these proportions are roughly steady over time, very few defendants per year match Rollins's specific profile: more than three § 924(c) convictions, and no relief from the statutory minimum for substantial assistance. They represent a fraction of a percentage point of all § 924(c) defendants.

So, in a quantitative sense, Rollins's sentence was a highly uncommon one. And there is another winnowing factor: Rollins's rehabilitation in the two decades since he was sentenced. He has a clean prison disciplinary record, without any violent infractions. Doc. 214 at 18-19; Doc. 252 at 5. He voluntarily participated in an eight-month course focused on helping inmates appreciate the severity of their crimes and the impact they had on their victims. Doc. 214 at 18. He has worked as a cook in prison and hopes to find employment using those skills upon his release. *Id*. at 19. In short, he has demonstrated that he is committed to living a law-abiding life should he be given that chance.

The Government does not contest the facts concerning Rollins's rehabilitation. Doc. 226 at 19-20; Doc. 253 at 18. It instead argues that the court may not consider those facts due to Congress's command that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added). Similarly, Application Note 3 of U.S.S.G. § 1B1.13 states that "rehabilitation of the defendant is not, *by itself*, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 n.3 (emphasis added). Given their use of the qualifiers "alone" and "by itself," those provisions plainly indicate that while rehabilitation cannot stand *on its own* as an extraordinary reason for a reduced sentence, it can play a *supporting* role in the analysis.

11

That is the case here. Rollins's sentence was exceedingly rare, resulting from the combination of the Government's charging decision and Rollins's decision to proceed to trial rather than cooperate and plead. Even within the small group of defendants who received similar sentences for § 924(c) convictions, Rollins's commitment to bettering himself and behaving properly in prison over the course of two decades sets him apart, at the very least from some in that group. The sheer rarity of Rollins's astonishingly long 106½-year sentence combined with his rehabilitation qualify as reasons that are beyond what is usual, customary, or regular—that is, reasons that are "extraordinary" within the meaning of § 3582(c)(1)(A).

In sum, Rollins has demonstrated extraordinary and compelling reasons for a sentence reduction.

## II. Section 3553(a) Factors

To grant Rollins's motion, the court must also find that a sentence reduction is warranted under the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." *Id*. § 3582(c)(1)(A); *see United States v. Saunders*, 986 F.3d 1076, 1077 (7th Cir. 2021) (affirming the denial of a § 3582(c)(1)(A) motion, despite the existence of extraordinary and compelling reasons, where the district court found that the § 3553(a) factors did not warrant a reduction). Section 3553(a) requires the court, upon considering seven factors, to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of a criminal sentence set forth in § 3553(a)(2). 18 U.S.C. § 3553(a). Under the particular facts and circumstances of this case, the court finds that the 106½-year sentence imposed on Rollins is far more than necessary to fulfill the purposes of a criminal sentence, and instead finds that a sentence of 28 years plus one day is sufficient, but no more than necessary.

The first § 3553(a) factor is "the nature and circumstances of the offense and the history and characteristics of the defendant." *Id*. § 3553(a)(1). Rollins's crimes were gravely serious.

12

Although thankfully nobody was physically injured, any armed robbery—not to mention *four* of them—puts life in danger, and one bank teller reported psychological injuries. Doc. 259 at 5.

Rollins's personal history and characteristics are mixed. On the mitigating side, he was relatively young, between 25 and 26, when he committed this string of robberies. He had only two prior convictions: one for unlawful possession of a weapon at age 18, and one for obstructing an officer at age 20, both of which led to suspended sentences. Doc. 259 at 12-13. Rollins served in the Army for two years, between 1991 and 1993, and as a National Guard reservist following his honorable discharge. *Id*. at 16, 18-19. He was consistently employed in the years preceding the robberies. *Id*. at 19. Finally, as noted, he has a favorable record of rehabilitation during the two decades since his sentencing, which may properly be considered in assessing his personal characteristics at this stage. *See United States v. Shaw*, 957 F.3d 734, 741 (7th Cir. 2020) (holding that a "district court may consider evidence of a defendant's post-sentencing rehabilitation when deciding whether to impose a reduced sentence under the First Step Act").

On the aggravating side, Rollins had two arrests for assaults that did not lead to criminal charges. Doc. 259 at 15. Most troubling, on September 4, 1998, a few months before the first bank robbery, he was arrested and charged with aggravated discharge of a firearm for firing a pistol at a vehicle he knew to be occupied. *Ibid*.; *see* 720 ILCS 5/24-1.2(a)(2). It appears that nobody was injured, and little information about the incident is available in the record. But state court records reveal that Rollins was ultimately convicted of that offense and sentenced to time served on April 24, 2003. *In re Rollins*, No. 1998 CR 2591401 (Cir. Ct. of Cook Cnty., Ill. filed Sept. 30, 1998). Given all this, a substantial but not excessively long term of imprisonment, 28

years and one day, is warranted based on the nature and circumstances of Rollins's crimes and his history and characteristics.

The second § 3553(a) factor requires consideration of the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A)-(B). For the reasons just given, 28 years in prison adequately meets those goals. Although it is unnecessary to do so, it also bears mention that the average federal sentence for murder in fiscal year 2002 was 232.7 months, or a bit over 19 years. U.S. Sent'g Comm'n, 2002 Sourcebook of Federal Sentencing Statistics, tbl. 13 (2002), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2002/table13_0.pdf. Rollins's crimes, while very serious, were far less serious than murder. If a 19-year sentence for murder serves to reflect the seriousness of that offense, to promote respect for the law, to provide just punishment for the offense, and to deter others from committing murder, then a 28-year sentence surely does the same for armed bank robberies, even for four of them.

The second § 3553(a) factor also requires the court to consider the need to "protect the public from further crimes of the defendant" and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(C)-(D). Rollins's criminal conduct in 1998 and 1999—the robberies charged here and in Missouri, and the unlawful discharge of a firearm charged in state court—show that he posed a serious danger to the public at the time he entered federal custody. On the positive side, over the past two decades, Rollins has taken advantage of the resources and rehabilitative opportunities available to him in prison. His exemplary prison record supports the

14

proposition that he would not pose a danger to the public if released. Rollins also has a supportive family, and he plans to live with his sister if released. Doc. 214 at 19. This family support is likely to reduce the risk that Rollins will reoffend upon his release. *See United States v. Warner*, 792 F.3d 847, 864 (7th Cir. 2015). A 28-year prison term will be sufficient to protect the public and will have provided Rollins with needed correctional treatment.

The third, fourth, and fifth § 3553(a) factors require the court to consider the kinds of sentences available, the Guidelines range, and any pertinent policy statements. 18 U.S.C. § 3553(a)(3)-(5). A defendant convicted under § 924(c) may not be sentenced to probation, *id*. § 924(c)(1)(D)(i), and, as noted, the minimum statutory sentence Rollins could have received at sentencing was 100 years (for the four § 924(c) counts) plus one day (for the four bank robberies). His Guidelines range was 78 to 97 months for the bank robberies, Doc. 259 at 20, plus 1200 months for the § 924(c) charges, for a total of 1278 to 1297 months. *See* U.S.S.G § 2K2.4(a)(2) (2000) (providing that, for a § 924(c) conviction, "the guideline sentence is the minimum term of imprisonment required by statute"); *id*. § 5G1.2(a) ("[T]he sentence to be imposed on a count for which the statute (1) specifies a term of imprisonment to be imposed; and (2) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment, shall be determined by that statute and imposed independently."); *see also Freeman v. United States*, 564 U.S. 522, 527-28 (2011). Were Rollins freshly sentenced today, the 28-year statutory minimum for the § 924(c) charges and the 78 to 97-month range for the bank robberies—assuming that range would hold—would result in a Guidelines range of 414 to 433 months, or 34½ years to just over 36 years. For the reasons given above, a sentence of 28 years and one day, though substantially below the original statutory minimum and somewhat below the current Guidelines range, is sufficient but no greater than necessary to accomplish the

15

goals of sentencing. And as already explained, reducing Rollins's sentence to 28 years would be consistent with the non-binding U.S.S.G. § 1B1.13.

Circling back to the third factor, the Government correctly does not dispute that § 3582(c)(1)(A) empowers the court to reduce a sentence to below the applicable statutory minimum if § 3582(c)(1)(A)'s requirements are met. In *Gunn* itself, the defendant had been convicted of a § 924(c) charge and had not yet served the 5-year minimum sentence when the district court denied her § 3582(c)(1)(A) motion. *See United States v. Gunn*, 2021 WL 719889, at *1 (C.D. Ill. Feb. 24, 2021) (order and opinion on remand). The Seventh Circuit nevertheless remanded for the district court to apply § 3582(c)(1)(A), a disposition that would have made no sense if § 3553(a)(3) barred any sentence reduction resulting in a sentence below the statutory minimum. *Gunn*, 980 F.3d at 1181; *see also United States v. Maday*, 799 F.3d 776, 778 (7th Cir. 2015) (stating in dicta that a defendant serving a 62-year statutory minimum sentence might one day qualify for release under § 3582(c)(1)(A)).

The sixth factor is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id*. § 3553(a)(6). This factor favors a sentence reduction due to the extreme disparity between Rollins's 106½-year sentence and sentences imposed after enactment of the First Step Act on similar defendants with similar records. As noted, a defendant convicted today of the same charges as Rollins would face a statutory minimum prison term of 28 years plus one day. *See* 18 U.S.C. § 924(c)(1)(A)(ii), (D)(ii); *Dean*, 137 S. Ct. at 1177. Considering the broader set of defendants convicted of multiple § 924(c) counts in a single prosecution, the First Step Act sharply reduced the proportion of such defendants receiving one or more 25-year terms. Comparing fiscal year 2018 to the one-year period immediately following passage of the First Step Act, the number of

16

multiple-count § 924(c) offenders actually rose, from 127 to 215.  U.S. Sent'g Comm'n, The First Step Act of 2018: One Year of Implementation, at 2, 36 (Aug. 2020), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200831_First-Step-Report.pdf.  Yet the number of multiple-count § 924(c) offenders sentenced to at least one 25-year term fell precipitously, from 119 in 2018 to only 5 in the year after the First Step Act.  *Id*. at 37.  This means that the overwhelming majority of defendants like Rollins convicted of multiple § 924(c) counts no longer receive even a single 25-year term.  The 25-year terms that Rollins received have nearly disappeared; as the Sentencing Commission observed, "five-, seven-, and ten-year penalties typically replaced what would have been a 25-year penalty prior to the First Step Act."  *Ibid*.

The disparity between the sentence Rollins received two decades ago and the sentences now imposed on similarly situated defendants may or may not bear on the question whether there are "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A)(i).  But the disparity is unquestionably relevant under § 3553(a)(6) and strongly supports Rollins's motion.  That said, reducing Rollins's sentence to *below* 28 years plus one day—and, in particular, to the time-served sentence he seeks—would create a reverse disparity, as similar defendants with similar records today necessarily would receive a *higher* sentence than the reduced sentence given Rollins.  The sixth factor therefore supports a sentence of 28 years plus one day and, at the same time, counsels against any sentence lower than that.

The seventh factor is "the need to provide restitution to any victims of the offense."  *Id*. § 3553(a)(7).  As required by law, the judgment ordered Rollins to make restitution to the banks in the amount of $12,058.  Doc. 103; *see* 18 U.S.C. § 3663A(c)(1)(A)(i) (requiring restitution for any crime of violence).  Although this factor is not terribly significant in light of the others, there

17

is no question that Rollins would be better able to repay that debt outside of prison, gainfully employed, than if imprisoned for the rest of his life.

### III.     Danger to the Community

Finally, the non-binding but still persuasive Policy Statement states that a sentence reduction is appropriate only if the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). As the Seventh Circuit recently explained, U.S.S.G. § 1B1.13(2) "matches the standard under § 3553(a)(2)(C)." *United States v. Burnley*, 834 F. App'x 270, 272 (7th Cir. 2021). For the reasons stated above as to § 3553(a)(2)(C), the court finds that Rollins no longer presents a danger to the community for purposes of U.S.S.G. § 1B1.13(2). His lack of any violent infractions in prison and family support make it unlikely that he will reoffend after his release.

### Conclusion

The court grants Rollins's § 3582(c)(1)(A) motion and reduces his custodial sentence to 28 years plus one day. An amended judgment and commitment order will follow shortly. The Government and/or the Probation Office are invited to move the court to make any appropriate modifications to the conditions of Rollins's supervised release.

March 17, 2021

_____
United States District Judge